# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| The Episcopal Church in South Carolina, <br><br> Plaintiff, <br><br> v. <br><br> The Church Insurance Company of Vermont, <br><br> Defendant. | Civil Action No. 2:19-cv-1672-RMG <br><br><br> **ORDER AND OPINION** |
| The Church Insurance Company of Vermont, <br><br> Third-Party Plaintiff, <br><br> v. <br><br> Episcopal Church of the Redeemer a/k/a Church of the Redeemer *et al.*, <br><br> Third-Party Defendants. | |
| The Church Insurance Company of Vermont, <br><br> Plaintiff, <br><br> v. <br><br> Episcopal Church of the Redeemer a/k/a Church of the Redeemer *et al.*, <br><br> Defendants. | Civil Action No. 2:19-cv-1713-RMG <br><br><br> **ORDER AND OPINION** |

This matter is before the Court on two related cases and various cross-motions: The Church Insurance Company of Vermont's ("CIC-VT") Motion to Consolidate Cases (Dkt. Nos. 6, 7 in

2:19-1672; Dkt. Nos. 7, 10 in 2:19-1713), CIC-VT's Second Motion to Consolidate Cases (Dkt. No. 11 in 2:19-1672), CIC-VT's Motion for Joinder (Dkt. No. 12 in 2:19-1672) and The Episcopal Church in South Carolina's Motion to Dismiss CIC-VT's Counterclaim and Third-Party Complaint (Dkt. No. 15 in 2:19-1672; Dkt. No. 12 in 2:19-1713).[1] For the reasons set forth below, the Court grants TECSC's motion to dismiss and denies as moot the motions for consolidation and joinder. The Court also orders briefing on TECSC's standing to bring claims for breach of contract, bad faith, breach of fiduciary duty and aiding and abetting a breach of fiduciary duty.

I. **Background**

This case arises out of a schism in 2012 in the Historic Diocese, originally known as the "Protestant Episcopal Church in the State of South Carolina," in which certain members and parishes sought to dissociate from The Episcopal Church ("TEC"), a nationwide hierarchical church. As alleged, CIC-VT is a captive insurance company for TEC, its parent company. (1672 Dkt. No. 1 at ¶¶ 7 – 11.) The insurance company was created to provide insurance to TEC and its "provinces, dioceses, parishes, missions, agencies, institutions and other entities connected with the Church[.]" (*Id.* at ¶ 12.) Pursuant to its mission, CIC-VT issued a Master Policy to The Episcopal Church in South Carolina ("TECSC"), the associated diocese of TEC in South Carolina. (*Id.* at ¶¶ 13 – 20.) Multiple parishes within TECSC were included under the Master Policy as participants and provided a certificate number. (*Id.* at ¶ 16; 1713 Dkt. No. 1 at ¶ 21.)

In 2012, a group, now calling themselves the Anglican Diocese of South Carolina, (the "Disassociated Diocese") purported to disassociate from TECSC and multiple parishes within TECSC similarly purported to disassociate from TECSC and joined the new Disassociated Diocese

---

[1] For the sake of clarity and given the duplicative nature of the cases, the Court will refer to documents from Case No. 2:19-cv-1672 as "1672 Dkt. No. [ X ]" and documents from Case No. 2:19-cv-1713 as "1713 Dkt. No. [ X ]."

("Disassociated Parishes.") Notably, multiple Disassociated Parishes were included as participants under the Master Policy issued by CIC-VT and are included here as Third-Party Defendants ("Third-Party Disassociated Parishes"). (1713 Dkt. No. 1 ¶ 21.)

In 2013, the Disassociated Diocese and Disassociated Parishes sued TECSC and TEC in state court, focusing largely on state property claims. (1672 Dkt. No. 1 at ¶ 28.) TEC and TECSC filed counterclaims and, ultimately, on August 2, 2017, the South Carolina Supreme Court held that TEC owned most of the property in dispute and found that twenty-eight of the Disassociated Parishes held real and personal property in trust for TEC. *Protestant Episcopal Church in the Diocese of S.C. v. Episcopal Church*, 421 S.C. 211, 265, 806 S.E.2d 82, 111 (2017), *reh'g denied* (Nov. 17, 2017), *cert. denied sub nom. Protestant Episcopal Church in the Diocese of S.C. v. The Episcopal Church*, 138 S. Ct. 2623 (2018). That case has since been remitted to the Dorchester County Circuit Court.

Also in 2013, TECSC filed a complaint against the Disassociated Diocese in this Court, alleging that the Disassociated Diocese and Disassociated Parishes were infringing and diluting TEC and TECSC's trademarks and engaging in false advertising. (1713 Dkt. No. 1 at ¶ 20.) This Court has since entered judgment in favor of TEC and TECSC in that case, and the case is currently on appeal. *See* Case No. 5:13-cv-587, Dkt. Nos. 667, 671, 673.

Throughout these litigations, CIC-VT has provided a defense to the Third-Party Disassociated Parishes included under the Master Policy. Initially, CIC-VT denied coverage to some of the Disassociated Parishes as they were not "affiliates" of TEC, and some Disassociated Parishes sued CIC-VT in this District, seeking, in part, a declaratory judgment that CIC-VT had a duty to defend the Disassociated Parishes against the counterclaims in the state court action. (*Id.*

at ¶ 44 – 44.) *See* Case No. 2:15-cv-2590-PMD, Dkt. No. 1 at ¶¶ 28 – 29.[2] However, the case was ultimately resolved in later 2015 by a joint stipulation of dismissal with prejudice. (1672 Dkt. No. 1 at ¶ 43) *See* Case No. 2:15-cv-2590-PMD, Dkt. No. 30. Furthermore, CIC-VT acknowledges in their Complaint in the Case No. 2:19-cv-1713 that they have been "providing the Disassociated Parishes a defense in the Underlying [Federal] Action under a reservation of rights pursuant to the applicable Policy issued to each of them" (1713 Dkt. No. 1 at ¶ 29.)

On June 11, 2019, TECSC brought claims against CIC-VT for breach of contract, bad faith, breach of fiduciary duty and aiding and abetting a breach of fiduciary duty. (1672 Dkt. No. 1.) The Complaint alleges, generally, that CIC-VT breached its contractual duties and engaged in bad faith and a breach of fiduciary duty by funding the litigation efforts of the Third-Party Parishes against TEC, CIC-VT's parent company, and TECSC, the intended beneficiary under the Master Policy. (*Id.*) The Complaint focuses on the allegation that, under South Carolina law and CIC-VT's corporate charter, a captive insurance company may not insure any risks other than those of its parent and affiliated companies, and that TECSC was the primary and intended beneficiary under the Master Policy. (*Id.* at ¶¶ 10, 16.) TECSC alleges that by funding the litigation efforts of no longer affiliated parishes, CIC-VT is liable to TECSC for the foreseeable damages from the litigation, such as lost insurance proceeds, lost value of TECSC property, and the increased costs of legal proceedings over six years. (*Id.* at ¶¶ 52, 58, 64, 71.)

On June 14, 2019, CIC-VT filed a second, related case against TECSC and the Third-Party Disassociated Parishes seeking a declaratory judgment regarding whether the Disassociated

---

[2] *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (citations omitted).

Parishes are covered under the Master Policy, and whether CIC-VT has an indemnity obligation to the Third-Party Disassociated Parishes. (1713 Dkt. No. 1.) Shortly thereafter, CIC-VT additionally filed a third-party complaint in the 1672 Action filed by TECSC seeking the same declaratory judgment and seeking to join the Third-Party Disassociated Parishes into the case. (1672 Dkt. Nos. 10 – 12.)

This matter now comes before the Court on motions filed in both cases: First, TECSC moves to dismiss CIC-VT's Counterclaim and Third-Party Complaint (1672 Dkt. No. 15; 1713 Dkt. No. 12), a motion filed in both cases, arguing that CIC-VT's claims are barred under a variety of legal and equitable grounds precluding consideration of the claims and because CIC-VT is not authorized to transact business in South Carolina; Second, CIC-VT moves to consolidate the cases, arguing they share common issues of fact and law (1672 Dkt. Nos. 6, 7, 11; 1713 Dkt. Nos. 7, 10); Finally, CIC-VT moves to join the Third-Party Disassociated Parishes in the action filed by TECSC. (1672 Dkt. No. 12.) Each has been fully briefed by the Parties, including with a Response in opposition to consolidation and joinder filed by the Third-Party Disassociated Parishes. (1672 Dkt. No. 46; 1713 Dkt. No. 41.)

For the reasons set forth below, the Court finds that CIC-VT's action and answer must be dismissed as they have failed to follow necessary procedures for filing a case in South Carolina, and the Court orders briefing on issues of standing.

## II.   **Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits the dismissal of an action if the complaint fails "to state a claim upon which relief can be granted." Such a motion tests the legal sufficiency of the complaint and "does not resolve contests surrounding the facts, the merits of the claim, or the applicability of defenses.... Our inquiry then is limited to whether the allegations constitute 'a short and plain statement of the claim showing that the pleader is entitled

to relief.'" *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citations omitted). In a Rule 12(b)(6) motion, the Court is obligated to "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, while the Court must accept the facts in a light most favorable to the non-moving party, it "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

To survive a motion to dismiss, the complaint must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the requirement of plausibility does not impose a probability requirement at this stage, the complaint must show more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint has "facial plausibility" where the pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III. Discussion

#### A. TECSC Motion to Dismiss (1672 Dkt. No. 15; 1713 Dkt. No. 12.)

TECSC's arguments to dismiss based on judicial estoppel, res judicata, the statute of limitations and laches are unavailing. First, judicial estoppel does not apply here. For judicial estoppel to apply, "(1) a party must be attempting to adopt a position before the current court that is inconsistent with a stance taken in prior litigation; (2) that position must be one of fact, not law; (3) the prior court must have actually accepted the inconsistent position; and (4) the party to be estopped must have intentionally misled the court to gain an unfair advantage." *Smith v. Bishop Gadsden Episcopal Ret. Cmty.*, No. 2:16-CV-03113-DCN, 2017 WL 4923733, at *3 (D.S.C. Oct.

31, 2017) *citing Lowery v. Stovall*, 92 F.3d 219, 224 (4th Cir. 1996).[3] TECSC cannot meet this test here. First, CIC-VT has not taken an inconsistent position. As TECSC correctly notes, CIC-VT, in the prior 2015 action, stated in its answer that "only affiliates of The Episcopal Church are eligible for coverage from CIC-VT." (1672 Dkt. No. 15-1 at 16.) However, CIC-VT does not now claim that non-affiliates are eligible for coverage under the Policy, it instead claims that the affiliation of the Disassociated Diocese changed. (1713 Dkt. No. 1 at ¶¶ 2 – 18.) Second, TECSC cannot show that the prior court relied on or accepted any inconsistent position, if one existed. The Court issued no substantive orders, did not take testimony, and did not otherwise indicate it "accepted" the allegedly inconsistent position. Finally, there is no showing that CIC-VT acted intentionally or in bad faith in 2015 or today. *See Martineau v. Wier*, 934 F.3d 385, 393 (4th Cir. 2019) ("judicial estoppel applies only when 'the party who is alleged to be estopped intentionally misled the court to gain unfair advantage,' and not when 'a party's prior position was based on inadvertence or mistake.'") (citations omitted). Judicial estoppel therefore does not apply.

Res judicata is similarly inapplicable. "For the doctrine of res judicata to be applicable, there must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and later suit; and (3) an identity of parties or their privies in the two suits." *Toney v. LaSalle Bank Nat. Ass'n*, 896 F. Supp. 2d 455, 465 (D.S.C. 2012), *aff'd*, 512 F. App'x 363 (4th Cir. 2013) (citations omitted). However, the prior action, Case No. 2:15-cv-2590,

---

[3] TECSC argues the Court should apply the test for judicial estoppel laid out by the South Carolina Supreme Court in *Cothran v. Brown*, 357 S.C. 210, 592 S.E.2d 629 (2004). However, here, the question is whether judicial estoppel applies to a prior federal case, implicating the integrity of a prior decision by a federal, not state, court. The Court therefore applies the Fourth Circuit's test for judicial estoppel. *See Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1156 (10th Cir. 2007) ("a federal court's ability to protect itself from manipulation should not depend upon the law of the state under which some or all of the claims arise."). Regardless, the result is the same under either standard as both require a prior inconsistent position and success in maintaining the position.

related to whether CIC-VT had to provide a defense for counterclaims in the state court property action. (*See* Case. No. 2:15-2590 Dkt. No. 1 at ¶ 29, defining "Covered Litigation" as "Civil Action No. 2013-CP-18-00013 pending in the "Court of Common Pleas for the First Judicial Circuit, State of South Carolina, Dorchester County.") Here, by contrast, CIC-VT's request for a declaratory judgment relates to the trademark case pending in federal court. (1713 Dkt. No. 1 at ¶ 20, defining "Underlying Acton" as "Case No. 2:13-cv-587-RMG" pending in the "United States District Court for the District of South Carolina"). The causes of action are therefore distinct and related to separate actions. Res judicata therefore does not apply.

The statute of limitations and laches similarly do not apply at this motion to dismiss stage. First, the alleged duty to defend has continued since, at least, 2013 and given the decisions issued in related cases since 2017, the Court cannot determine that CIC-VT did not discover within the last three years that certain relevant facts may have changed affecting their duty to defend, such as the status of the Disassociated Parishes affiliation with TECSC. Similarly, given recent decisions, the Court cannot find at the motion to dismiss stage that CIC-VT unreasonably delayed in bringing their case. Therefore, while the Court dismisses CIC-VT's claims for the reasons described below, the Court declines to dismiss the case on these other grounds.[4]

However, CIC-VT nonetheless cannot maintain their filed action, Case No. 2:19-cv-1713, in this Court as CIC-VT lacks a certificate of authority to do business in this state. As a matter of

---

[4] TECSC is correct that, under Fed. R. Civ. P. 14(a)(1), to bring in a third-party defendant, that nonparty must possibly be "liable to it for all or part of the claim against it." As CIC-VT fails to identify how the Disassociated Parishes may be liable to CIC-VT for any of the claims brought by TECSC, CIC-VT cannot, in a Third-Party Complaint, bring in the Disassociated Parishes as third-parties to TECSC's 1672 Action. Nonetheless, this rule does not prohibit CIC-VT, after acquiring necessary certificates, from filing a declaratory judgment against the Disassociated Parishes. Further, TECSC correctly notes that the indemnification claims are not ripe, as no court has ordered damages covered under the policy or, indeed, any damages at all.

public record, the Court is able to take judicial notice of the fact that CIC-VT is not licensed or authorized to do business as a captive insurance company, or as an insurance company in general, in South Carolina.[5] CIC-VT also does not dispute this fact. The law in South Carolina is clear:

> An unauthorized insurer is not permitted to maintain any action, suit, or proceeding in this State to enforce a right, claim, or demand arising out of the transaction of insurance business until the insurer has obtained a certificate of authority to transact insurance business in this State.

S.C. Code Ann. § 38-25-540.[6] *See also* S.C. Code Ann. § 33-15-102(a) ("A foreign corporation transacting business in this State without a certificate of authority may not maintain a proceeding in any court in this State until it obtains a certificate of authority."). The requirement to have a certificate of authority applies equally to captive insurance companies. *See* S.C. Code Ann. § 38-90-60(B) ("No captive insurance company shall do any business in this State unless it first obtains from the director a certificate of authority authorizing it to do business in this State."). *See also* S.C. Code Ann. § 38-5-10 ("Every insurer doing business in this State must be licensed and supervised by the director or his designee….").

CIC-VT argues this provision does not apply here as CIC-VT is not doing business in South Carolina and instead only "covering a risk," citing to S.C. Code Ann. § 39-61-10. (1713 Dkt. No. 42 at 25 – 26.) However, S.C. Code Ann. § 39-61-10, *et seq.*, which relates to motor club services,

---

[5] *Hall v. Virginia*, 385 F.3d 421, 424 (4th Cir.2004) (holding "may take judicial notice" of "publicly available [statistics] on the official redistricting website of the Virginia Division of Legislative Services."). The Court reviewed the public records from the South Carolina Secretary of State, available at https://www.scsos.com, and from the South Carolina Department of Insurance, available at https://www.doi.sc.gov. The Court could not find any indication that the Church Insurance Company of Vermont is registered or authorized in South Carolina. The Court found separate entities, titled the Church Insurance Partnership Agency, Inc. and The Church Insurance Agency Corporation, neither of which were incorporated in Vermont and neither appear to be the party named here.

[6] Notably, though, "[t]his section does not prevent the insurer from defending an action in the courts of this State." S.C. Code Ann. § 38-25-540. This section therefore does not affect their right to file an Answer.

seems inapplicable to whether CIC-VT, a general liability insurer, may maintain an action here. Further, while S.C. Code Ann. § 38-90-60(B) discusses who must obtain a certificate of authority, namely, a captive insurer who "do[es] any business" in South Carolina, S.C. Code Ann. § 38-25-540, which dictates whether an insurer may maintain an action, contains no such requirement. Instead, S.C. Code Ann. § 38-25-540 has a bright line rule that no "unauthorized insurer" may maintain an action in South Carolina.[7] CIC-VT, therefore, cannot maintain their filed action in this Court without a certificate of authority. Case No. 2:19-cv-1713 and CIC-VT's counterclaim in Case No. 2:19-cv-1672 therefore must be dismissed, and all related motions regarding consolidation and joinder are denied as moot.

However, while CIC-VT cannot maintain an action here, they are permitted to file a pleading, namely an answer, in the case filed by TECSC, Civil Action No. 2:19-cv-1673, as that action does not arise out of the insurance contract. TECSC argues that CIC-VT is required to post a bond under S.C. Code Ann. § 38-25-550 to defend itself in the action brought by TECSC. Specifically, S.C. Code Ann. § 38-25-550(a) requires that "[b]efore an unauthorized insurer files or causes to be filed any pleading in any court action, suit, or proceeding," an insurer must "deposit...cash or securities" or file "a bond" in an amount set by the court sufficient to meet any judgment. S.C. Code Ann. § 38-25-550(a)(1). In the alternative, the insurer may "[p]rocure a certificate of authority to transact business...." *Id.* at (a)(2).

---

[7] This requirement applies to any action "arising out of the transaction of insurance business." S.C. Code Ann. § 38-25-540. CIC-VT does not contend that it did not "transact[] insurance business," nor could it as its action is premised on its issuance of the Master Policy at issue. (Dkt. No. 42 at 25 – 25.) However, S.C. Code Ann. § 38-25-540 prohibits unauthorized insurers from maintaining an action in South Carolina regardless of where the insurer transacts business generally. CIC-VT's position that they did not transact business in South Carolina highlights the logic of this statute: if an insurer does not do business in South Carolina, they cannot maintain lawsuits in the State regarding its insurance contracts.

As explained by the South Carolina Supreme Court in *Ross v. Am. Income Life Ins. Co.*, 232 S.C. 433, 102 S.E.2d 743 (1958), while the bond requirement applies to cases proceeding based in contract, it likely does not apply to "actions ex delicto," torts, as "if the statute be construed as applying to actions ex delicto a plaintiff could, in effect, prohibit an unauthorized insurer from filing a pleading by demanding an excessive amount of damages." *Id.* at 439. The court in *Ross* determined that an action for fraud and deceit in inducing purchase of a policy did not "aris[e] out of a policy" and therefore the statute did not apply. *Id.* at 441. Notably, the *Ross* court indicated that the statute was limited to actions to recover a "loss from a casualty insured against under the terms of the policy." *Id. See also Williams v. Modern Home Life Ins. Co.*, 260 F. Supp. 649, 653 (D.S.C. 1966).[8] TECSC's claims here, which do not seek recovery of a loss for a casualty insured under the Master Policy and instead seek damages based on CIC-VT's funding of litigation against TECSC, is therefore not an action covered by S.C. Code Ann. § 38-25-550 and CIC-VT does not need post a bond or procure a certificate of authority prior to defending TECSC's claims. Nonetheless, this does not affect the Court's decision that CIC-VT cannot maintain their action without a certificate of authority, as their request for a declaratory judgment on the terms of the policy falls squarely within South Carolina's insurance law.

---

[8] *Ross* also indicates that CIC-VT's argument that they are not subject to South Carolina's unauthorized insurance law as they did not "transact business" in South Carolina is incorrect, as the South Carolina Supreme Court in *Ross* found separate provisions of South Carolina's unauthorized insurer laws applied where an insurer "issues and delivers one contract of insurance or indemnity to any person in this State, or…collects a premium thereon[.]" *Williams v. Modern Home Life Ins. Co.*, 260 F. Supp. 649, 653 (D.S.C. 1966) *citing Ross v. Am. Income Life Ins. Co.*, 232 S.C. 433, 102 S.E.2d 743 (1958).

## B. TECSC Standing

The Court also has concerns regarding TECSC's standing to bring a lawsuit against CIC-VT for *providing* insurance coverage.[9] *See Plyler v. Moore*, 129 F.3d 728, 732 (4th Cir. 1997) ("questions concerning subject-matter jurisdiction may be raised at any time by either party or *sua sponte* by this court."). Notably, TECSC does not allege that the insurance policy itself contains provisions prohibiting CIC-VT from funding entities not affiliated with TEC, and instead this contract and duty allegedly arises from "applicable captive insurance company laws and CIC-VT's corporate charter." (Dkt. No. 1 at ¶¶ 49, 55, 61.) Yet, as alleged in the Complaint, CIC-VT's corporate charter defines TEC, not TECSC, as its parent organization, and South Carolina law prohibits a captive insurance company from insuring any risks other than those of "its parent, affiliated companies" and other related businesses. (*Id.* at ¶¶ 10 – 12.) TECSC, is allegedly an affiliate of TEC. (*Id.* at ¶ 13.) While TEC, as the parent company, may have standing to prohibit its captive insurance company from breaching its alleged statutory duties or corporate charter depending on the nature of their relationship, an issue that would similarly need to be addressed, it is unclear how TECSC, as another affiliated entity, would have standing to challenge coverage provided a separate alleged affiliate. It is true that TECSC is allegedly the insured under the policy, yet each parish also has a "participant certificate number" providing them with coverage. (*Id.* at ¶ 16.) The Court also has no information regarding who has been paying the insurance premiums or whether the Master Policy, or related documents, contain any terms prohibiting coverage to non-affiliated entities. Without such additional information or law, finding that TECSC has

---

[9] The party invoking federal jurisdiction, here TECSC, has the burden to demonstrate standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016) ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.").

standing simply because CIC-VT is funding the defense of an opposing party would seemingly allow litigants to challenge an opposing party's insurance coverage while the merits of a dispute are still being litigated.

The Court therefore will order briefing of the issue of standing for TECSC to bring their four causes of action against CIC-VT for providing coverage no-longer affiliated entities. TECSC will have ten days from the date of this Order to file a memo on the issue of standing. If necessary, CIC-VT will have five days to file any response.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** TECSC's Motion to Dismiss CIC-VT's Counterclaim and Third-Party Complaint (Dkt. No. 15 in 2:19-1672; Dkt. No. 12 in 2:19-1713) based on CIC-VT's status as an unauthorized insurer in South Carolina and **DENIES AS MOOT** all other pending motions, namely, CIC-VT's Motion to Consolidate Cases (Dkt. Nos. 6, 7 in 2:19-1672; Dkt. Nos. 7, 10 in 2:19-1713), CIC-VT's Second Motion to Consolidate Cases (Dkt. No. 11 in 2:19-1672) and CIC-VT's Motion for Joinder (Dkt. No. 12 in 2:19-1672).

The Court also **ORDERS** briefing regarding whether TECSC has standing to bring its claims against CIC-VT. TECSC has **TEN (10) DAYS** from the date of this Order to file a memo explaining its standing to bring claims for breach of contract, bad faith, breach of fiduciary duty, and aiding and abetting a breach of fiduciary duty. To the extent CIC-VT wishes to file a response, they will have **FIVE (5) DAYS** from the date TECSC files its memo to file a response.

**AND IT IS SO ORDERED.**

_Richard Mark Gergel_
United States District Court Judge

November __, 2019
Charleston, South Carolina