IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| The Episcopal Church in South Carolina, | Civil Action No. 2:19-cv-1672-RMG |
| Plaintiff, | |
| v. | ORDER AND OPINION |
| The Church Insurance Company of Vermont, | |
| Defendant. | |

This matter is before the Court on requested briefing regarding The Episcopal Church in South Carolina's ("TECSC") standing to bring claims for breach of contract, bad faith, breach of fiduciary duty, and aiding and abetting a breach of fiduciary duty against The Church Insurance Company of Vermont's ("CIC-VT") for providing a defense to various Disassociated Parishes in their litigation with TECSC. (Dkt. No. 54.) For the reasons set forth below, the Court finds that TECSC lacks standing to bring this case and dismisses this action.

I. **Background**

This case arises out of a schism in 2012 in the Historic Diocese, originally known as the "Protestant Episcopal Church in the State of South Carolina," in which certain members and parishes sought to dissociate from The Episcopal Church ("TEC"), a nationwide hierarchical church. As alleged, CIC-VT is a captive insurance company for TEC. (Dkt. No. 1 at ¶¶ 7 – 11.) The insurance company was created to provide insurance to TEC and its "provinces, dioceses, parishes, missions, agencies, institutions and other entities connected with the Church[.]" (*Id.* at ¶ 12.) Pursuant to its mission, CIC-VT issued a Master Policy to The Episcopal Church in South Carolina ("TECSC"), the associated diocese of TEC in South Carolina. (*Id.* at ¶¶ 13 – 20.)

Multiple parishes within TECSC were included in the Master Policy as participants and provided a certificate number. (*Id.* at ¶ 16.)

In 2012, a group, now calling themselves the Anglican Diocese of South Carolina, (the "Disassociated Diocese") purported to disassociate from TEC and multiple parishes within TECSC similarly purported to disassociate from TEC and joined the new Disassociated Diocese ("Disassociated Parishes.") Notably, multiple Disassociated Parishes were included as participants in the Master Policy issued by CIC-VT. As represented by TECSC, the premiums under the Master Policy were paid for, at least in part, by parishes. (Dkt. No. 55 at 19.) Furthermore, as alleged, the operative policies issued in 2012 were issued prior to the disassociation. (*Id.* at 2 n. 1; 58 at 5.)

In 2013, the Disassociated Diocese and Disassociated Parishes sued TECSC and TEC in state court, focusing largely on state property claims. (Dkt. No. 1 at ¶ 28.) TEC and TECSC filed counterclaims and, ultimately, on August 2, 2017, the South Carolina Supreme Court held that TEC owned most of the property in dispute and found that twenty-eight of the Disassociated Parishes held real and personal property in trust for TEC. *Protestant Episcopal Church in the Diocese of S.C. v. Episcopal Church*, 421 S.C. 211, 265, 806 S.E.2d 82, 111 (2017), *reh'g denied* (Nov. 17, 2017), *cert. denied sub nom. Protestant Episcopal Church in the Diocese of S.C. v. The Episcopal Church*, 138 S. Ct. 2623 (2018). That case has since been remitted to the Dorchester County Circuit Court.

Also in 2013 TECSC filed a complaint against the Disassociated Diocese in this Court, alleging that the Disassociated Diocese and Disassociated Parishes were infringing and diluting TEC and TECSC's trademarks and engaging in false advertising. *See* Case No. 2:13-cv-587-

RMG. This Court has since entered judgment in favor of TEC and TECSC in that case, and the case is currently on appeal. *See* Case No. 2:13-cv-587-RMG, Dkt. Nos. 667, 671, 673.

Throughout these litigations, CIC-VT has provided a defense to the Third-Party Disassociated Parishes insured by CIC-VT. Initially, CIC-VT denied coverage to some of the Disassociated Parishes as they were not "affiliates" of TEC, and some Disassociated Parishes sued CIC-VT in this District, seeking, in part, a declaratory judgment that CIC-VT had a duty to defend the Disassociated Parishes against the counterclaims in the state court action. (*Id.* at ¶ 44 – 44.) *See* Case No. 2:15-cv-2590-PMD, Dkt. No. 1 at ¶¶ 28 – 29.[1] However, the case was ultimately resolved in later 2015 by a joint stipulation of dismissal with prejudice. (Dkt. No. 1 at ¶ 43) *See* Case No. 2:15-cv-2590-PMD, Dkt. No. 30.

On June 11, 2019, TECSC brought claims against CIC-VT for breach of contract, bad faith, breach of fiduciary duty and aiding and abetting a breach of fiduciary duty. (Dkt. No. 1.) The Complaint alleges, generally, that CIC-VT breached its contractual duties and engaged in bad faith and a breach of fiduciary duty by funding the litigation efforts of the Third-Party Parishes against TEC and TECSC, the intended beneficiary under the Master Policy. (*Id.*) The Complaint focuses on the allegation that, under South Carolina law and CIC-VT's corporate charter, a captive insurance company may not insure any risks other than those of its parent and affiliated companies, and that TECSC was the primary and intended beneficiary under the Master Policy. (*Id.* at ¶¶ 10, 16.) TECSC alleges that by funding the litigation efforts of no longer affiliated parishes, CIC-VT is liable to TECSC for the foreseeable damages from the litigation, such as lost insurance proceeds,

---

[1] *See Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (citations omitted).

lost value of TECSC property, and the increased costs of legal proceedings over six years. (*Id.* at ¶¶ 52, 58, 64, 71.)

In responding to the Court's request for briefing of standing, TECSC asserts, generally, that it has standing to assert claims for breach of contract and bad faith as state laws regarding captive insurance companies are both explicitly and implicitly incorporated into the Policies at issue, that it has standing to allege aiding and abetting a breach of fiduciary duty as CIC-VT's funding of litigation participates in the Disassociated Diocese and Parishes' misuse of trust funds, and that it has standing to allege a breach of fiduciary duty as CIC-VT owed TECSC a fiduciary duty as a captive insurer. (Dkt. No. 55.) CIC-VT, in opposition, states that neither the Policies nor applicable law require it to abstain from providing a defense to a separate insured, and further denies that it owes any fiduciary duty to TECSC or that it aided and abetted a breach of a fiduciary duty. (Dkt. No. 58.)

## II. Legal Standard

Dismissal for lack of standing is a legal question for the Court to decide under Fed. R. Civ. P. 12(b)(1).[2] *See White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir 2005). There are two components to standing: Article III standing under the constitution and prudential standing which is a judicially created limit on jurisdiction. *Doe v. Va. Dep't of State Police*, 713 F.3d 745, 753 (4th Cir. 2013). The party invoking federal jurisdiction, here TECSC, has the burden to demonstrate standing. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016)

---

[2] Fed. R. Civ. P. 12(b)(1) permits the Court to consider evidence outside of the pleadings when assessing subject matter jurisdiction and TECSC here requested the right to reply to certain corporate documents submitted by CIC-VT and discovery to develop an evidentiary record. (Dkt. Nos. 55; 61.) However, the Court has not relied on any external evidence or documents, and instead relies solely on the allegations and representations by TECSC and finds that, even taking all of them as true, TECSC lacks standing.

("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements."). To demonstrate Article III standing, a plaintiff must show that: "(1)...he or she suffered an actual or threatened injury that is not conjectural or hypothetical, (2) the injury must be fairly traceable to the challenged conduct; and (3) a favorable decision must be likely to redress the injury." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) *citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 – 61 (1992). Prudential standing, which is less clearly defined, includes "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Va. Dep't of State Police*, 713 F.3d at 753.

### III. <u>Discussion</u>

For each cause of action TECSC fails to show that there is any injury or that an injury is traceable to the challenged conduct and further TECSC's claims solely attempt to raise another entity's legal rights, namely that of TEC or other parent company.[3]

TECSC's argues it has standing to bring claims for breach of contract and bad faith from the alleged incorporation of applicable state captive insurance laws into the Policies at issue. (Dkt. No. 55 at 4 – 8; 13 – 19.) To begin, while TECSC is correct that insurance contracts are "presumed to have been made with reference to the law of the land, and such laws enter into and form a part of the contract,'" *Export Leaf Tobacco Co. v. American Insurance Co.*, 260 F.2d 839, 845 (4th Cir. 1958), it does not follow that an insurance contract confers on an insured a private right of action for any statutory violation by their insurer. Regardless, TECSC also has not alleged any injury,

---

[3] CIC-VT represents that its parent corporation is not TEC, but rather the "Church Pension Fund," a freely standing corporation whose trustees are appointed by TEC. (Dkt. No. 58 at 3.)

namely, TECSC has not alleged that CIC-VT breached any captive insurance law. The captive insurance laws of Vermont, where CIC-VT is incorporated, and South Carolina, where the Disassociated Parishes are located, are substantially the same as relevant here, and under either law CIC-VT did not breach its requirements as a captive insurer. Specifically, S.C. Code Ann. § 38-90-20(a)(1) states that "a pure captive insurance company may not insure any risks other than those of its parent, affiliated companies, controlled unaffiliated business, risks assumed from a risk pool for the purpose of risk sharing, or a combination of them[.]" *See also* 8 V.S.A. § 6002(a)(1) (Vermont law). However, here, there is no dispute that at the time the operative Policy was issued, the Disassociated Parishes were still affiliated with TECSC and therefore CIC-VT did not breach its statutory duty to only insure affiliated entities. Further, it is undisputed that, at least to some extent, the Disassociated Parishes continued paying premiums on these insurance policies, issued while they were affiliated companies. TECSC therefore cannot show any injury as TECSC cannot show any breach of the captive insurance laws. Finally, in addition to TECSC failing to demonstrate Article III standing, these claims fail prudential standing as TECSC is attempting to raise the rights of another party, namely TEC or other parent of CIC-VT. TECSC does not allege that it is a parent of CIC-VT and therefore, regardless, it is not the proper party to raise these statutory concerns.[4]

---

[4] TEC also points to language in the 2012 Policy which states that CIC-VT "shall not be liable" for "any claim brought by one or more former or current Episcopal Entities against one or more former or current Episcopal Entities," defining Episcopal Entities as organizations recognized by the Anglican Communication or TEC, neither of which currently apply to the Disassociated Diocese. (Dkt. No. 55 at 16.) However, in addition to TECSC acknowledging that this language was not included in the relevant section of the 2012 Policy, namely coverage for advertising injury, TECSC again tries to bring suit on rights that are not their own. (*Id.* at n. 11.) The section clearly states that "The Company," meaning CIC-VT, shall not be liable, providing CIC-VT with the right to deny coverage where applicable. It does not, however, provide TECSC with the right to sue CIC-VT for its decision to provide coverage to a separate insured that is paying premiums on its own policy number.

TECSC has also failed to allege any breach of a fiduciary relationship through CIC-VT's provision of a defense to the Disassociated Parishes. It is true, as argued by TECSC, that a contract for insurance may, in certain circumstances, create a fiduciary relationship between the insurer and the insured. *See Harleysville Grp. Ins., Corp. v. Heritage Cmtys., Inc.*, 420 S.C. 321, 340, 803 S.E.2d 288, 298 (2017) ("[W]hen an insurer controls the defense of the action against its insured 'a high fiduciary duty [i]s owed by the insurer to the insured.'") (citations omitted). However, TECSC has identified no case or South Carolina law recognizing any breach of a fiduciary duty where an insurer *provides* a defense to an insured, as TECSC advocates for here. To the contrary, each South Carolina case cited by TECSC stands for the position that a third-party intended beneficiary, such as a surviving spouse, may, in certain circumstances, bring a lawsuit for a *failure* to provide benefits. *See Kleckley v. Northwestern Nat. Cas. Co.*, 338 S.C. 131, 135, 526 S.E.2d 218 (2000) (allowing widow to bring claim for "bad faith refusal to pay benefits"); *Goode v. St. Stephens United Methodist Church*, 329 S.C. 433, 494 S.E.2d 827 (S.C. App., 1998) ("[W]hen the contract is made for the benefit of the third person, that person *may enforce the contract* if the contracting parties intended to create a direct, rather than an incidental or consequential, benefit to such third person.") (emphasis added); *Pitts v. Jackson Nat. Life Ins. Co.*, 352 S.C. 319, 330, 574 S.E.2d 502 (Ct. App. 2002) ("Although the relationship between an insurer and an insured has at times been characterized as 'special,' this has occurred only after the parties have entered into a mutually binding contract for insurance, *specifically in the posture of an insured's claim of bad faith refusal to pay benefits* due under an insurance contract.") (emphasis added). Therefore, while South Carolina law recognizes certain fiduciary duties regarding insurance contracts, such as a duty to intended third-party beneficiaries to pay benefits, it does not recognize a duty to third-parties to *refrain* from paying benefits. There is therefore no breach of any recognized duty and

no alleged injury. Further, again, as an independent and sufficient basis for finding a lack of standing, TECSC is attempting to raise the rights of another. As cited in its Complaint and briefs, CIC-VT's corporate charter lists TEC as the intended beneficiary, not TECSC, and therefore even though TECSC allegedly is insured under the master policy, there is no allegation (separate from the trust allegations below) that TECSC is an intended beneficiary regarding a duty to defend or indemnify. (*See* Dkt. No. 1 at ¶¶ 9 – 13; Dkt. No. 55 at 15.) Therefore, TECSC has no standing to bring a claim for breach of fiduciary duty.

Finally, turning to TECSC's claim that CIC-VT aided and abetted a breach of fiduciary duty, TECSC's claim focuses on the their allegation that CIC-VT, by funding litigation regarding the Dennis Canon and property trusts in state court, are "knowingly participating" in a breach of a fiduciary duty, namely the Disassociated Parishes' failure to comply with the terms of the Dennis Canon. *Bennett v. Carter*, 421 S.C. 374, 380, 807 S.E.2d 197, 200 (2017) ("The elements for aiding and abetting a breach of fiduciary duty are (1) a breach of a fiduciary duty owed to the plaintiff; (2) the defendant's knowing participation in the breach; and (3) damages."). TECSC is correct that the South Carolina Supreme Court, in 2017, issued a final judgment holding that TEC owned most of the property in dispute and that twenty-eight of the Disassociated Parishes held real and personal property in trust for TEC. *Protestant Episcopal Church in the Diocese of S.C. v. Episcopal Church*, 421 S.C. 211, 265, 806 S.E.2d 82, 111 (2017), *reh'g denied* (Nov. 17, 2017), *cert. denied sub nom. Protestant Episcopal Church in the Diocese of S.C. v. The Episcopal Church*, 138 S. Ct. 2623 (2018). However, even assuming without deciding that there has been a breach, CIC-VT's provision of a defense is not a "knowing participation" in the breach of the alleged trust while the case is remitted.

The case cited by TECSC, *Bennett v. Carter*, is instructive. In *Bennett*, the South Carolina Supreme Court held that a case could proceed against accountants for aiding and abetting a breach of fiduciary duty where the accountants, possessing the trust checkbooks, wrote the checks transferring money out of a trust. *Bennett*, 421 S.C. at 378 – 379. Here, by contrast, there is no allegation that CIC-VT is actively removing funds from the trust, and instead CIC-VT is providing funding from the insurance company, which TECSC alleges may be used to misappropriate trust assets. This is not the type of direct removal of trust assets considered by *Bennett* and therefore is not "knowing participation." Indeed, to hold otherwise would transform every provision of a defense to a losing party in a breach of trust claim into a claim for aiding abetting a breach of trust against an insurer. Finally, the claim for aiding and abetting a breach of fiduciary duty requires determining whether there has been "a breach of a fiduciary duty owed to the plaintiff." *Bennett*, 421 S.C. at 380. This claim would necessitate the Court determining issues of state property and trust law, something that this Court has previously held must remain in state Court, and the Court will not now wade into this issue after it has been litigated in state court, including a final judgment, for the past seven years. (Case No. 13-cv-587-RMG, Dkt. No. 140 at 10.)

Therefore, the Court finds that TECSC lacks standing to bring a claim for breach of contract, bad faith, breach of a fiduciary duty or aiding and abetting a breach of fiduciary duty. TECSC's claims would ask this Court to do something extraordinary, find a right to sue for *providing* insurance coverage to a party who, it is undisputed, has a participant number and has paid premiums. The Court's concerns are only heightened by the fact that this lawsuit proceeds against an insurer of an opposing party in a separate litigation, essentially opening the door to parallel litigations over whether an opposing party is being appropriately defended by an insurer. The fact that TECSC also is insured by CIC-VT does not change this analysis. It may be that

another party has standing to bring these claims, but as the Court explained above, TECSC clearly lacks standing here.

## IV. Conclusion

For the foregoing reasons, the Court finds that The Episcopal Church in South Carolina **LACKS STANDING** to bring this case and **DISMISSES THIS ACTION.**

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

January 9, 2020
Charleston, South Carolina